ALEXANDER GRAY, executor, appellant,

*v.*

BENJAMIN GRAY et al., respondents.

*Mr. C. T. Reed* and *Mr. A. V. Schenck*, for appellant.

*Mr. Woodbridge Strong*, for respondents.

On appeal from a decree of the ordinary, whose opinion, de-
livered at the May Term, 1883, is as follows:

The orphans court of Middlesex county, by their decree of
May 7th, 1883, removed Alexander Gray from his office of ex-
ecutor of the will of his late father, Alexander Gray, senior, de-
ceased, and appointed an administrator *de bonis non* with the
will annexed, in his place, and directed Gray to deliver over to
the administrator all the property of the estate in his hands, and
state and settle his account as executor. The grounds of this
action on the part of the court were, that they were satisfied,
from the proofs in the matter, that Gray had wasted and mis-
applied the estate, or some part thereof, and had abused the
trust and confidence reposed in him as executor. The applica-
tion was made by Jane Gray, widow of the testator, and Jane
Gray the younger, and Isabella and Benjamin Gray, all of
Middlesex county, children of the testator. From this decree
the executor appealed. The evidence in the matter shows that

on or about the 26th of May, 1874, Gray and his co-executor,. his brother John, now deceased, filed, in the surrogate's office of Middlesex county, their joint partial account as acting executors. of their father, by which it was ascertained that there was a balance of assets of the estate in their hands, of the value of $100,421.66, or thereabouts. Afterwards, in May, 1875, citation to account was issued on the application of Jane Gray the elder and Jane Gray the younger, and Isabella Gray and other children of the testator, and under it Alexander and John accounted again, but this time not jointly as before, but separately. In the account filed by Alexander, he charged himself with $11,918.04, and prayed allowance for (among other things) $9,660, as paid on a claim which he made against the estate for his interest, $20,000, in a mortgage given by Hosie and Longstreet, which interest he alleged he sold or assigned to his father in 1867, and interest on the $20,000 to June 1st, 1875, $11,200;. the claim being at that date for $31,200, principal and interest. Exceptions to the account and to the allowance of that payment of $9,660 were filed by several of the persons interested in the estate. When the matter of the exceptions came up for hearing, the court being of opinion that it had no jurisdiction over the subject of that claim, declined to hear the evidence in support of it, and subsequently, August 22d, 1876, Gray filed his bill in the court of chancery of this state, against his co-executor, John Gray, and the other persons interested in the distribution of the estate under the will, for the purpose of establishing his claim,. and obtaining payment thereof ou of the estate. By the bill he prayed an injunction restraining the defendants from taking any further proceedings in the orphans court in regard to the accounts of John and himself, and the exceptions thereto, and from taking or asking for any order or decree of that court touching them, and that the accounts might be stated and settled in the court of chancery, and under its directions, and that all just credits and allowances might be made to him for all moneys due him from the estate, including the claim of $20,000 and interest. To the bill John filed a separate answer, and Jane Gray the elder, Jane Gray the younger, Isabella Gray, William.

Gray and Maria Green filed their joint and several answer. Evidence was taken in the cause, and it was heard in the court of chancery on the bill, answer, replications and proofs taken on both sides, and the chancellor being of opinion that the complainant was not entitled to the relief prayed for by his bill, by his decree of May 18th, 1880, dismissed the bill and dissolved the injunction which had been issued on the filing thereof. From that decree the complainant appealed to the court of errors and appeals, and the cause was again heard there on its merits, and by decree of July 19th, 1881, that court in all things affirmed the decree appealed from, with costs to be paid by the appellant. In April, 1882, Alexander Gray filed, in the surrogate's office of Middlesex county, what purported to be his amended account, as well of all his receipts as of his disbursements for or on account of the estate. By it he charged himself with nothing, and prayed allowance for $1,505.32 for disbursements. This account was sworn to by him as in all things just and true, both as to the moneys that had come to his hands, and the disbursements thereof, according to the best of his memory and belief. In that account he did not claim allowance for the claim of $20,000 and interest (that claim had then been disallowed both by the court of chancery and the court of last resort), and, on the other hand, he did not charge himself with any money whatever received for or on account of the estate.

It appears that in January, 1882, a few months previous to the filing of that so-called amended account, Jane Gray the elder, Jane Gray the younger, Isabella Gray, Benjamin Gray, D. A. Fell and Elizabeth, his wife, filed their petition in the orphans court of Luzerne county, in Pennsylvania, where John and Alexander Gray had taken out letters of administration of the estate in April, 1873, praying that Alexander might be called upon to give an account of the assets which had come to his hands as administrator, and that he might be removed from his office, and that in the meantime he be enjoined from acting in or interfering with any matter pertaining to the estate. By his answer to that petition, filed in February, 1882, he admits that he has in his hands $11,000, or thereabouts, of the money of the

estate (the same money with which he charged himself in his first separate account in this state), and he also alleges that he has a just claim against the estate, and denies that there is or has been a determination of the court of chancery of this state, or of any court (the decision of the court of errors and appeals against him had then been rendered; it was rendered in July, 1881), that his claim was not a proper and legal charge upon the estate.   He adds :

"It is true that your respondent asked the Middlesex orphans court of New Jersey to allow the claim, but it was decided that the court had no jurisdiction over it, and that he did then file a bill in chancery, which was dismissed under the peculiar rules of chancery procedure in New Jersey, but no adjudication of the claim has been made that the same is not a just and legal charge upon the estate."

This answer is sworn to by Gray himself.   He is a practicing lawyer of this state, and had been at the bar here many years when the answer was sworn to.   He must have known that the decisions of the court of chancery and of the court of errors and appeals were upon the merits of that claim, as presented by himself in his own suit, brought for the very purpose of establishing it, and that on full investigation of the matter, as the cause was submitted by him, his bill was dismissed because the claim was rejected on the proofs.   It appears, also, in an account which he made up and sent, in the spring of 1882, to his lawyer in Pennsylvania as the basis of one to be drawn by the latter to be filed there, he charged himself with $33,342.95, including the $11,-624.89 and interest thereon to April 1st, 1882, $5,207.73, and claimed allowance for $54,509.15 for principal and interest of the rejected claim.   It appears quite clearly that his design was, since his claim had been rejected here, to refuse to account here for the money with which he charged himself in his original separate account in this state, and, by amending his account here, expunge the charge, and then account for the money in Pennsylvania and claim allowance there for the claim.   The evidence shows that the money was received in this state.   It was due from Joseph Brown, of Pennsylvania, to the estate on a note.   The

amount was placed by Brown to the credit of Gray, as executor, who drew it (living in this state) by check or draft. In his answer, before mentioned, to the petition in the orphans court of Luzerne county, he states that he accounted for that money in his account of 1875 in this state. The facts of the case show a refusal on his part to account for that money in the court in which he is bound to account for it, and in which he has charged himself with it, and a determination on his part to apply it, so far as it will go, and other moneys of the estate which have or may come to his hands, to the payment of the rejected claim, notwithstanding the adverse adjudications thereon which forbid it. It may be added that he asked no permission of the court here to strike out the charge for his account, to the end that he might account for it in Pennsylvania, but has simply filed what he terms an amended account, from which he omits the charge. The conclusion is irresistible that he has wasted and misapplied the estate, and has abused the trust and confidence reposed in him as executor. The decree appealed from will be affirmed, with costs and $100 counsel fee to be paid by the appellant.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the ordinary in the foregoing opinion.